**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

UNITED STATES OF AMERICA,

                                            Plaintiff,

v.

KEVIN TOMMIE HALL,

                                            Defendant.

CRIMINAL ACTION

No. 06-20162-01-KHV

---

## MEMORANDUM AND ORDER

On October 7, 2008, a jury found defendant guilty of armed bank robbery (Count 1); using a firearm during and in relation to a crime of violence (Count 2); and possession of a firearm by a convicted felon (Count 3).   On June 10, 2009, the Court sentenced defendant to 594 months in prison.   This matter is before the Court on defendant's <u>Motion Under 18 U.S.C. § 3582(c)(1)(A) For Compassionate Release Or A Reduction Of Sentence</u> (Doc. #289) filed November 21, 2022. On December 6, 2022, pursuant to District of Kansas Standing Order No. 20-8, the Office of the Federal Public Defender notified the Court that it does not intend to enter an appearance to represent defendant.   For reasons stated below, the Court overrules defendant's motion.

## Factual And Procedural Background

On October 7, 2008, a jury found defendant guilty of armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and (d), and 2 (Count 1); using a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c) and 2 (Count 2); and possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) (Count 3).   See <u>Verdict</u> (Doc. #104).   On Counts 1 and 2, the Court instructed the jury that defendant could be found guilty either as a principal or an aider and abettor.   The verdict form, however, did not specify under which theory that the jury found defendant guilty on those counts.

At trial, a bank teller testified that the robber wore a ski mask and displayed a pistol-grip

shotgun.    Defendant asked for a mistrial in part because the evidence was insufficient for a jury to find him guilty of the charged offenses.    In overruling defendant's argument on sufficiency of the evidence, the Court found that even though the government presented circumstantial evidence, the evidence was substantial and overwhelming, and included the following: defendant was driving a vehicle which matched the description provided by bank employees; defendant attempted to elude police by driving for an extended period at a high rate of speed; during the chase, defendant or his passenger—co-defendant James Morrison—threw items from the vehicle including a shotgun which matched the one used during the bank robbery, clothing items and money (including bank bait bills); one of the items discarded from defendant's vehicle was a dark colored ski mask similar to that worn by the bank robber, with DNA matching that of defendant; a Wal-Mart receipt in the vehicle showed the purchase of a dark colored ski mask and gloves; video surveillance showed that defendant and Morrison had gone to Wal-Mart the night before the robbery and purchased the mask and gloves; several months after the government charged defendant, he sent letters to his former girlfriend and asked her to say that she was with him at a halfway house in Leavenworth at approximately 2:00 p.m. on November 7, 2006; and defendant's former girlfriend testified that she was not with defendant that day at any time.    See Memorandum And Order (Doc. #140) filed June 2, 2009 at 7–8.

On Counts 1 and 3, based on a total offense level of 34 and a criminal history category VI, defendant's guideline range was 262 to 327 months in prison.    See Presentence Investigation Report ("PSR"), ¶ 85.    The guideline sentence on Count 2 was 300 months consecutive to the sentences on Counts 1 and 2, the statutory minimum under 18 U.S.C. § 924(c)(1)(A).    Id., ¶¶ 83, 87.    On June 10, 2009, the Court sentenced defendant to 594 months in prison—concurrent terms of 294 months for armed bank robbery (Count 1) and 180 months for possession of a firearm by a

convicted felon (Count 3), and a consecutive term of 300 months for using a firearm during and in relation to a crime of violence (Count 2).[1]   See Judgment In A Criminal Case (Doc. #144).   The Tenth Circuit affirmed.   See Judgment (Doc. #176).

Morrison pled guilty to brandishing a firearm during and in relation to a crime of violence in violation of 18 U.S.C. §§ 924(c) and 2.   Even though the plea agreement did not specify whether Morrison pled guilty as the principal or an aider and abettor, the factual basis of the plea established that Morrison went into the bank and left before defendant entered the bank alone with a shotgun.   See Plea Agreement ¶ 2, attached to Petition To Enter Plea Of Guilty And Order Entering Plea (Doc. #29) filed February 8, 2007.   The Court sentenced Morrison to 84 months in prison—the statutory minimum for brandishing a firearm during a crime of violence.   See 18 U.S.C. § 924(c)(1)(A)(ii).

On March 10, 2015, the Court overruled defendant's Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence By A Person In Federal Custody (Doc. #184) and denied a certificate of appealability.   See Memorandum And Order (Doc. #208).   In part, the Court overruled defendant's claim that counsel should have objected to the Court's aiding and abetting instruction on Counts 1 and 2, as follows:

> Defendant apparently argues that because [his co-defendant] pled guilty to aiding and abetting the robbery of MidAmerican Bank, the government had to proceed against defendant as the principal, i.e. the one who actually entered the bank.   The record reflects that defense counsel adequately raised this issue.   At trial, the Court overruled counsel's objection because (1) the indictment clearly charged aiding and abetting and (2) defendant's alibi defense injected the issue whether he was at the bank or whether he merely drove the getaway car.   See Transcript Of Trial (Doc.

---

[1]      Ordinarily, the statutory range for an offense under Section 922(g)(1) (Count 3) is up to ten years in prison.   18 U.S.C. § 924(a)(2).   Because defendant had at least three prior convictions for violent felonies or serious drug offenses under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), his enhanced statutory range on Count 3 was 180 months to life. See 18 U.S.C. § 924(e)(1).

#151) at 571.   Defendant has not shown how counsel's argument on this issue was deficient or prejudicial.

Id. at 35–36.

On December 14, 2018, the Court overruled in part defendant's Rule 60(b) Motion Revisited [And] Rule 60(b)(6) New Motion (Doc. #245) and dismissed it to the extent that it was a second or successive motion under 28 U.S.C. § 2255.   Memorandum And Order (Doc. #247). In doing so, the Court overruled defendant's claim that in deciding his initial Section 2255 motion, it had failed to rule on defendant's claim that the aiding and abetting instruction and general verdict form were erroneous under Rosemond v. United States, 572 U.S. 65 (2014).   Memorandum And Order (Doc. #247) at 4–9; see United States v. Davis, 750 F.3d 1186, 1193 (10th Cir. 2014) (after Rosemond, jury instruction on aiding and abetting should address defendant's advance knowledge of firearm).   The Court noted that both it and the Tenth Circuit had rejected this precise claim. Memorandum And Order (Doc. #247) at 8 (noting that defendant specifically raised Rosemond issue in prior application for certificate of appealability that Tenth Circuit denied).   As to defendant's claim that at sentencing, the Court erroneously classified him as a career offender under 18 U.S.C. § 924(e)(1) and Section 4B1.1 of the Sentencing Guidelines, the Court dismissed it as an unauthorized successive Section 2255 motion.   See id. at 9–10.   The Court denied a certificate of appealability on both rulings.   Likewise, the Tenth Circuit denied a certificate of appealability.   Order Denying Certificate Of Appealability (Doc. #257) filed July 11, 2019.

The Tenth Circuit later granted defendant's motion for authorization to file a successive motion under 28 U.S.C. § 2255.   Order (Doc. #258) at 3–4.   Specifically, the Tenth Circuit authorized defendant to file a successive motion including claims that (1) under United States v. Davis, 139 S. Ct. 2319 (2019), his conviction on Count 2 under 18 U.S.C. § 924(c) should be

-4-

vacated because armed bank robbery is not a "crime of violence" and (2) under <u>Johnson v. United States</u>, 576 U.S. 591 (2015), his sentence on Count 3 should be vacated because his prior bank robbery convictions no longer qualify as violent felonies under the ACCA, 18 U.S.C. § 924(e)(1). <u>Order</u> (Doc. #258) at 2–4.[2]   This Court overruled defendant's claims in his successive Section 2255 motion and denied a certificate of appealability.   <u>Memorandum And Order</u> (Doc. #283) filed August 23, 2021 at 17.   In doing so, the Court declined to consider defendant's <u>Rosemond</u> claim because it was beyond the scope of the Tenth Circuit's authorization.   <u>Id.</u> at 5–7.   The Court held alternatively that the <u>Rosemond</u> claim did not satisfy the statutory requirements for a successive Section 2255 motion.   <u>Id.</u> at 7.   The Tenth Circuit denied a certificate of appealability and dismissed defendant's appeal.   <u>Order</u> (Doc. #288) filed March 11, 2022 at 1–3.

Defendant currently is confined at USP Coleman II, a Bureau of Prisons ("BOP") facility in Sumterville, Florida, which houses some 1250 inmates.   Two inmates at the facility have died from COVID-19.   <u>See</u> <u>COVID-19 Cases</u>, https://www.bop.gov/coronavirus/ (last visited Feb. 21, 2023).   As of February 21, 2023, USP Coleman II has no inmates and only one staff member who have tested positive for COVID-19 but not yet recovered.   <u>See</u> <u>id.</u>

Defendant is 62 years old.   Defendant states that because of various medical conditions, he is at high risk of contracting COVID-19 and of severe illness or death if he contracts it.   <u>Motion Under 18 U.S.C. § 3582(c)(1)(A) For Compassionate Release Or A Reduction Of Sentence</u> (Doc. #289) at 2–7.   With good time credit, defendant's projected release date is March 29, 2052.   Defendant asks the Court to grant compassionate release because of (1) his age, his health

---

[2]     The Tenth Circuit denied authorization to file a successive Section 2255 motion on defendant's claim that under <u>Johnson</u>, the Court erred in applying the career criminal enhancement of his sentences on Counts 1 and 3 because his prior bank robbery convictions no longer qualify as crimes of violence under Section 4B1.1 of the Sentencing Guidelines.   <u>Id.</u> at 3.

conditions and COVID-19, (2) the length of his sentence compared to Morrison's sentence and the average sentence for violent offenders, (3) the fact that other violent offenders have received compassionate release and (4) legal challenges to the validity of his convictions and sentence.[3]

## Analysis

A federal district court may modify a defendant's sentence only where Congress has expressly authorized it to do so. See 18 U.S.C. § 3582(b)–(c); United States v. Blackwell, 81 F.3d 945, 947 (10th Cir. 1996). Congress has set forth only three limited circumstances in which a court may modify a sentence: (1) upon motion of the BOP Director or defendant under Section 3582(c)(1)(A); (2) when "expressly permitted by statute or by Rule 35" of the Federal Rules of Criminal Procedure; and (3) when defendant has been sentenced "based on a sentencing range that has subsequently been lowered by the Sentencing Commission." 18 U.S.C. § 3582(c).

Under the compassionate release statute, the Court may grant relief if defendant establishes that (1) extraordinary and compelling reasons warrant a reduced sentence, (2) a reduced sentence is consistent with applicable Sentencing Commission policy statements and (3) the Section 3553(a) factors warrant a reduced sentence. 18 U.S.C. § 3582(c)(1)(A); United States v. Maumau, 993 F.3d 821, 831 (10th Cir. 2021); United States v. McGee, 992 F.3d 1035, 1042–43 (10th Cir. 2021). The Sentencing Commission has not issued an "applicable" policy statement for motions for compassionate release filed by defendants. Maumau, 993 F.3d at 837; McGee, 992 F.3d at 1050. Unless and until the Sentencing Commission issues such a policy statement,

---

[3]     Defendant initially sought release in part to care for his step-mother. In his reply, defendant states that his step-mother now intends to either have her daughter care for her or move into a care facility. Defendant's Response To The Government's Opposition To His 18 U.S.C. § 3582(c)(1)(A) Motion (Doc. #294) at 1–2. The Court therefore does not address defendant's request for release on this ground.

the second requirement does not apply.   See United States v. Warren, No. 11-20040-01-WPJ, 2021 WL 1575226, at *2 (D. Kan. Apr. 22, 2021).   Accordingly, the Court evaluates only the first and third requirements.[4]

## I.       Extraordinary And Compelling Reasons For Release

The Court has discretion to independently determine whether defendant has shown "extraordinary and compelling reasons" that warrant release.   See McGee, 992 F.3d at 1044, 1048.   In the context of compassionate release, "extraordinary" means "exceptional to a very marked extent."   United States v. Baydoun, No. 16-20057, 2020 WL 4282189, at *2 (E.D. Mich. July 27, 2020) (quoting extraordinary, Webster's Third International Dictionary, Unabridged (2020)).   "Compelling" means "tending to convince . . . by forcefulness of evidence."   Id. (quoting compelling, Webster's Third International Dictionary, Unabridged (2020)).   The Court also considers how the Sentencing Commission has defined extraordinary and compelling reasons for BOP motions.   See United States v. Carr, No. 20-1152, 2021 WL 1400705, at *4 (10th Cir. Apr. 14, 2021) (district court has discretion to consider definition of extraordinary and compelling reasons in Section 1B1.13 application notes).   For BOP motions, the Sentencing Commission has identified four reasons that may constitute grounds for compassionate release: (1) defendant's medical condition; (2) defendant's age; (3) defendant's family circumstances; and (4) a catchall category for an "extraordinary and compelling reason other than, or in combination with," the first three categories.   U.S.S.G. § 1B1.13, Reduction In Term Of Imprisonment Under 18 U.S.C.

---

[4]        The Court may entertain requests for compassionate release only upon a motion of the BOP or of defendant after he submits a request to the BOP and the earlier of (1) when he "fully exhaust[s] all administrative rights to appeal" or (2) "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility."   18 U.S.C. § 3582(c)(1)(A).   The government does not address whether defendant satisfied the exhaustion prerequisite.   The Court therefore need not address whether defendant has exhausted administrative remedies.

§ 3582(c)(1)(A) (Policy Statement), cmt. n.1 (Nov. 2018).

      A.    Defendant's Age, His Medical Conditions And COVID-19

Defendant seeks release because of his age, his medical conditions and the risk of severe illness or death if he contracts COVID-19.   Currently, USP Coleman II has no inmates and only one staff member who have tested positive for COVID-19 but not yet recovered.   As the government notes, defendant has received the COVID-19 vaccine but he refuses a booster vaccine. Defendant has asthma, end stage liver cirrhosis, portal hypertension and an apparent heart ailment, which together elevate his risk of contracting COVID-19 or suffering severe illness from it.   Even so, defendant has received the Johnson & Johnson single dose COVID-19 vaccine and has refused a booster vaccine.   Apparently, the prevailing scientific view is that even vaccinated individuals with medical comorbidities do not have a significant risk of severe disease or death if they contract COVID-19.   Defendant has not shown that compared to his proposed placement in the community, he faces a heightened or imminent risk of exposure to COVID-19 at USP Coleman II. See United States v. Wright, No. CR-TDC-17-0388, 2020 WL 2571198, at *3 (D. Md. May 21, 2020) (inmate must show imminent risk of exposure to COVID-19 and high risk for death or serious illness should he or she contract COVID-19 based on age, medical conditions or other factors).   In sum, defendant has not established that his age, his health conditions and the risk of contracting COVID-19 collectively is an extraordinary and compelling reason for release.   See United States v. Gunkel, No. 22-5055, 2022 WL 17543489 (10th Cir. Dec. 9, 2022) (despite defendant's medical conditions, district court did not abuse discretion finding that vaccinations prevented "undue risk" of serious COVID-19 case or resulting complications); United States v. McRae, No. 21-4092, 2022 WL 803978, at *2 (10th Cir. Mar. 17, 2022) (when defendant has access to vaccine, incarceration during COVID-19 pandemic does not present extraordinary and

compelling reason warranting sentence reduction) (citations omitted).

Next, defendant argues that separate from COVID-19, his age and medical conditions by themselves are extraordinary and compelling reasons for a reduced sentence. Defendant is 62 years old and has several severe health conditions including end stage cirrhosis of the liver and portal hypertension.[5]  Defendant's medical conditions require medical monitoring and ongoing treatment, but defendant has failed to show that medical personnel cannot adequately monitor and treat his conditions in the prison environment. Defendant is not at a federal medical center and he apparently has not requested that the BOP transfer him to such a facility. Moreover, defendant's original proposed release plan—to help care for his step-mother who is 83 years old—

---

[5]    Defendant argues that the BOP has negligently failed to treat his liver condition and was deliberately indifferent to his medical needs. Defendant's Response To The Government's Opposition To His 18 U.S.C. § 3582(c)(1)(A) Motion (Doc. #294) at 8–9. Defendant's allegations relate to the cause of his liver cirrhosis, which BOP medical personnel diagnosed nearly ten years ago. Exhibit 1 – Medical Records (Doc. #289-1) at 3 (diagnosed with hepatitis C in 2013); Exhibit 2 – Medical Records (Doc. #294-2) at 6 (noting liver cirrhotic appearance on May 20, 2014). Defendant concedes that his use of drugs may have caused some damage to his liver. Motion Under 18 U.S.C. § 3582(c)(1)(A) For Compassionate Release Or A Reduction Of Sentence (Doc. #289) at 6. Claims which assert potential negligence of medical personnel and constitutional violations are more appropriately brought initially—if at all—in a separate civil action, not as part of a motion for compassionate release. United States v. Lougee, No. 14-20068-05-DDC, 2022 WL 2064893, at *2 (D. Kan. June 8, 2022); see also United States v. Quijada-Castillo, No. 3:19-CR-20-CRS, 2021 WL 1930710, at *4 (W.D. Ky. May 13, 2021) (redress for perceived cruel and unusual punishment not properly sought in compassionate release motion because First Step Act does not contemplate reduction in sentence or release to compensate for past government misconduct). A separate timely civil action can more readily assess the validity of such claims and provide any necessary relief. On this record, defendant has not shown that the BOP's delay of medical treatment—which apparently did not warrant a separate civil action or administrative grievance—constitutes an extraordinary and compelling reason for release.

Defendant also asserts that the BOP was deliberately indifferent to his medical needs because it failed to protect him from contracting COVID-19. Defendant's Response To The Government's Opposition To His 18 U.S.C. § 3582(c)(1)(A) Motion (Doc. #294) at 5. Again, defendant should initially raise this issue—if at all—in a separate administrative grievance or civil action. At this stage, defendant has not established that the BOP's COVID-19 measures at the prison constitute an extraordinary and compelling reason for release.

suggests that his age and medical conditions alone or together are not extraordinary and compelling reasons for release.

B.      Length Of Defendant's Sentence

Defendant argues that extraordinary and compelling reasons exist because of the length of his sentence relative to other offenders.   He first notes the disparity between his sentence of 594 months and the sentence of 84 months that Morrison received.   The Court imposed the two sentences based on the guideline ranges under the United States Sentencing Guidelines and various factors under 18 U.S.C. § 3553(a).   The guideline ranges reflect the relative culpability and criminal history of each defendant.   The Court then balanced the various factors under Section 3553(a) in light of each defendant's unique circumstances.   While defendant ultimately received a much higher sentence than his co-defendant, he had a more significant criminal history than Morrison and chose to proceed to trial and testify falsely—in contrast to Morrison, who pled guilty to a lesser offense.[6]   At sentencing, defendant—like all defendants—had the opportunity to argue that based on his unique circumstances, the Court should not apply the calculated guideline range.   Defendant has not established that the large disparity between his sentence and Morrison's sentence is an extraordinary and compelling reason for release.

Defendant also argues that he received a much longer sentence than the average sentence in federal court for one convicted of murder, robbery, child pornography or child molestation. Congress has determined the relevant statutory range for each of these offenses.   The guideline

---

[6]      The Court notes that defendant received significantly less severe sentences for his prior bank robbery convictions.   In 1984, when defendant was charged with armed bank robbery, he pled guilty to the lesser offense of bank robbery and received a sentence of 120 months.   In 1992, instead of facing charges for three separate armed robberies which he admittedly committed, defendant pled guilty to one count of armed bank robbery and received a sentence of 194 months.

ranges then reflect the relative culpability and criminal history of each defendant.   Defendant has not shown that the length of his sentence relative to the average sentence of other violent offenders is an extraordinary and compelling reason for release.

      C.    <u>Relief Granted To Other Defendants Who Committed Violent Offenses</u>

Defendant argues that the Court has reduced the sentence of several defendants who committed offenses that were more violent than the instant offenses.   To determine whether a defendant has shown extraordinary and compelling reasons, the Court conducts an "individualized review of all the circumstances of [defendant's] case."   <u>Maumau</u>, 993 F.3d at 837.   Defendant has not shown that he is similarly situated to defendants who have received reduced sentences under the compassionate release statute.   Defendant notes that he has never shot anyone during a robbery, but he ignores the fact that he displayed a firearm and threatened bank employees in each robbery.   Defendant has committed at least four armed bank robberies.[7]   Defendant has not shown that the Court's grant of relief to non-similarly situated defendants constitutes an extraordinary and compelling reason for his release.

      D.    <u>Legal Challenges To Validity Of Convictions And Sentence</u>

Defendant asserts that he has presented extraordinary and compelling reasons for release because (1) his convictions on Counts 1 and 2 are invalid under <u>Rosemond</u> and (2) the Court erroneously classified him as a career offender under 18 U.S.C. § 924(e)(1) and Section 4B1.1 of the Sentencing Guidelines.   The government does not address defendant's claims on the merits,

---

[7]    In addition to the two armed bank robbery convictions, defendant pled guilty in 1984 to bank robbery in a case where the grand jury originally charged him with armed bank robbery.   Defendant admitted to law enforcement that he committed two other armed bank robberies in 1990, but the government never charged him for those crimes.   Defendant potentially was involved in a sixth armed bank robbery of a Topeka bank in 2006, but the government did not pursue charges apparently because of the length of his sentence in this case.

but argues that defendant cannot raise these claims in a motion under 18 U.S.C. § 3582(c)(1)(A) because his exclusive remedy for such claims is under 28 U.S.C. § 2255. See Government's Response To Defendant's Motion For Compassionate Release (Doc. #293) at 25–26. A number of unpublished Tenth Circuit decisions hold that in determining whether extraordinary and compelling circumstances warrant a reduced sentence under the compassionate release statute, the district court cannot consider arguments that a defendant could have also raised in a challenge to his conviction or sentence under 28 U.S.C. § 2255.[8] For reasons stated below, the Court declines to follow these unpublished decisions.

Section 2255 is the exclusive remedy to test the validity of "a judgment and sentence." Johnson v. Taylor, 347 F.2d 365, 366 (10th Cir. 1965). As such, Section 2255 prohibits a prisoner from seeking other "writ[s] of habeas corpus" unless the prisoner's remedy under Section 2255 "is inadequate or ineffective to test the legality of his detention." 28 U.S.C. § 2255(e); see Johnson, 347 F.2d at 366. In contrast, a compassionate release motion is not a habeas motion and it does not test the validity of a conviction or sentence. See United States v. Trenkler, 47 F.4th 42, 48 (1st Cir. 2022) ("habeas and compassionate release are distinct vehicles for relief;" Section 2255 deals with legality and validity of conviction and provides method for automatic vacatur of sentences; compassionate release statute grants district court discretion whether to exercise

---

[8]     See, e.g., United States v. Headley, No. 22-8060, 2022 WL 17820568, at *2 (10th Cir. Dec. 20, 2022) ("Nothing in § 3582(c) permits Defendant to make an end run around a direct appeal or § 2255 motion by raising a challenge to the constitutionality of his plea, conviction, and/or sentence in a motion for compassionate relief under § 3582(c)(1)(A)."); United States v. Gieswein, No. 22-6014, 2022 WL 2841835, at *3 (10th Cir. July 21, 2022) (compassionate release motion challenging legality of sentence "patently without merit" because Section 3582(c)(1)(A) is not substitute for Section 2255's "exclusive remedy for testing the validity of a judgment and sentence"); United States v. Mata-Soto, 861 F. App'x 251, 255 (10th Cir. 2021) (proper vehicle to raise argument that court applied incorrect statutory sentencing range was under Section 2255, not in motion for compassionate release under Section 3582(c)(1)(A)).

leniency based on individualized review of defendant's circumstances); see also United States v. Chen, 48 F.4th 1092, 1098–99 (9th Cir. 2022) (Congress has placed only two limitations directly on meaning of extraordinary and compelling reasons: (1) courts bound by Sentencing Commission policy statement, which does not currently apply and (2) requirement that rehabilitation *alone* not extraordinary and compelling).   The compassionate release statute, Section 3582(c)(1)(A), only permits the district court to *reduce* a sentence, not to vacate it or the underlying conviction as Section 2255 authorizes.   See 18 U.S.C. § 3582(c)(1)(A) (relief limited to "reduc[ing] the term of imprisonment"); 28 U.S.C. § 2255(a) (court may "vacate, set aside or correct the sentence"); see also United States v. McCall, 56 F.4th 1048, 1072 (6th Cir. 2022) (en banc) (Moore, J., dissenting) ("grant of compassionate release does not invalidate the relevant sentence; rather, it recognizes that a holistic consideration of the defendant's circumstances entitles [him] to early release—a remedy that Congress specifically codified in § 3582(c)(1)") (citing Maumau, 993 F.3d at 837 and other authorities).   In that sense, a compassionate release motion is "an additional, alternative, or supplemental remedy to 28 U.S.C. § 2255," which does not fall within the statutory bar for other habeas motions.   United States v. Ford, No. 10-20129-07-KHV, 2023 WL 1434302, at *4 (D. Kan. Feb. 1, 2023) (quoting Bradshaw v. Story, 86 F.3d 164, 166 (10th Cir. 1996)); see United States v. Dahda, No. 04-20060-01-DDC, 2022 WL 4079021, at *6 n.7 (D. Kan. Sept. 6, 2022) ("Based on the list of various remedies identified in Section 3582(c), one could conclude that a compassionate release motion under Section 3582(c)(1)(A) is an alternative or supplemental remedy to a motion under Section 2255.").

        To warrant compassionate release, the Court has broad "discretion to consider whether *any* reasons are extraordinary and compelling."   McGee, 992 F.3d at 1050 (quoting United States v. Brooker, 976 F.3d 228, 236 (2d Cir. 2020)) (emphasis added); Maumau, 993 F.3d at 837 (quoting

-13-

Brooker, 976 F.3d at 236) (emphasis added).   The Court declines to read the compassionate

release statute as including a prohibition on arguments related to "extraordinary and compelling"

circumstances that could be or could have been raised in a Section 2255 motion.   See United

States v. Ruvalcaba, 26 F.4th 14, 26 (1st Cir. 2022) (declining to infer that Congress intended

categorical and unwritten exclusion for non-retroactive "changes in law" in light of its specific

statutory exclusion for rehabilitation); cf. Concepcion v. United States, 142 S. Ct. 2389, 2396

(2022) ("It is only when Congress or the Constitution limits the scope of information that a district

court may consider in deciding whether, and to what extent, to modify a sentence, that a district

court's discretion to consider information is restrained.").   Indeed, even though such

circumstances will undoubtedly be rare, it seems that one of the most compelling and extraordinary

reasons to reduce a defendant's sentence would be that his conviction or sentence is invalid but he

can no longer obtain relief under Section 2255.   Cf. Maumau, 993 F.3d at 838 (Tymkovich, C.J.,

concurring) (relief based on non-retroactive changes in law should be "relatively rare" and only in

context of individualized review of defendant's circumstances).

At a minimum, defendant's arguments about the strength and the validity of his conviction

and sentence—even if insufficient to warrant relief under Section 2255 had they been timely

raised—should be considered as part of the Court's holistic review whether his "unique

circumstances" constitute extraordinary and compelling reasons for relief under

Section 3582(c)(1)(A)(i).   McGee, 992 F.3d at 1048; see Maumau, 993 F.3d at 837 (district court

did not err in finding "extraordinary and compelling reasons" based on "individualized review of

all the circumstances of [defendant's] case" and conclusion that "combination of factors"

warranted relief); cf. United States v. Montoya, No. 22-6004, 2022 WL 3207615, at *2 n.1 (10th

Cir. Aug. 9, 2022) (execution of defendant's sentence in violation of Fifth and Eighth Amendments

-14-

not "independent ground for granting compassionate release under § 3582(c)(1)(A)," but "facts that would establish a violation may well be relevant to the decision whether to grant release under the statute").   The Court's individualized review of the unique circumstances of defendant's case should not exclude the very reason why the individual is in prison, i.e. the validity of his conviction and sentence.

Here, defendant's arguments related to the validity of his convictions on Counts 1 and 2, the ACCA enhancement on Count 3 and the career offender enhancement under the Guidelines do not present the rare case of extraordinary and compelling reasons to reduce his sentence. Defendant has previously raised each of these arguments in various procedural postures.   In each instance, this Court or the Tenth Circuit has denied relief.   At this stage, defendant apparently can no longer assert these claims as a basis for a second or successive Section 2255 motion.   The Court therefore evaluates whether defendant's prior unsuccessful legal challenges collectively establish extraordinary and compelling reasons to reduce his sentence.

1.      Claim Under Rosemond

Defendant previously argued that under Rosemond, (1) the Court should sentence him for unarmed bank robbery under Count 1 and vacate his Section 924(c) conviction under Count 2 because he did not know about the firearm until after his co-defendant committed the crime, Motion To Vacate (Doc. #259) at 8, 19–20, and (2) the Court erred in instructing the jury that he could be found guilty on Counts 1 and 2 under an aiding and abetting theory of liability, id. at 18– 19, 30.   The Court and the Tenth Circuit rejected defendant's arguments on procedural grounds or in the context of ineffective assistance of counsel.   See United States v. Hall, No. 21-3200, 2022 WL 728999, at *1 (10th Cir. Mar. 11, 2022); United States v. Hall, 772 F. App'x 762, 764– 65 & n.2 (10th Cir. 2019).

-15-

Defendant is correct that the Court's aiding and abetting instruction in 2008—which followed the then-current Tenth Circuit pattern instructions—would be erroneous under Rosemond.   See United States v. Hopkins, 797 F. App'x 401, 401–02 (10th Cir. 2019) (under Rosemond, defendant cannot be convicted of aiding and abetting Section 924(c) violation unless he has advance knowledge confederate will carry firearm; aiding-and-abetting jury instruction erroneous if it does not include advance-knowledge requirement).   Even if defendant had timely raised the Rosemond issue,[9] however, he is not entitled to relief.

As explained above, defendant's alibi defense injected the issue whether he was at the bank or whether he merely drove the getaway car.   As a result, the Court's instructions permitted the jury to find defendant guilty on Counts 1 and 2 either as a principal or an aider and abettor.   The verdict form, however, did not specify under which theory that the jury found defendant guilty on those counts.   Even so, Count 3 did not include an aiding and abetting theory of liability and the jury found defendant guilty on that count for being a felon in possession of a firearm.   In the context of the evidence presented at trial, the jury's finding that defendant knowingly possessed a firearm shows that contrary to his testimony the jury necessarily concluded that he displayed the firearm at the bank, i.e. he was guilty as the principal on the armed bank robbery and Section 924(c) counts.   See United States v. Rosemond, 615 F. App'x 480, 484 (10th Cir. 2015) (on remand from Supreme Court, no plain error in erroneous instruction because jury found that defendant possessed ammunition in gun, and therefore must have found him guilty of

---

[9]    The Court assumes for purposes of defendant's present motion that Rosemond applies retroactively to cases on collateral review.   See Steiner v. United States, 940 F.3d 1282, 1290–91 (11th Cir. 2019) (because Rosemond alters range of conduct that law punishes, it constitutes new substantive rule that applies retroactively on collateral review); Farmer v. United States, 867 F.3d 837, 842 (7th Cir. 2017) (same).

Section 924(c) offense as principal, not merely as aider and abettor).   Defendant has not set forth a plausible scenario where the jury could have found him guilty on Counts 1 and 2 under an aider and abettor theory (purportedly because he drove the getaway car but had no knowledge of the bank robbery or firearm until Morrison displayed the shotgun and immediately discarded it during the police chase) and also found him guilty on Count 3 for knowingly possessing a firearm. Defendant therefore has not established that his arguments under Rosemond establish extraordinary and compelling reasons for his release.

2.   Challenge To ACCA Enhancement

Defendant asserts that the Court erroneously imposed a 15-year statutory minimum sentence on Count 3 under the ACCA.   Under the ACCA, the Court must impose a sentence of at least 15 years in prison if a defendant has "three previous convictions for a violent felony or a serious drug offense, or both, committed on occasions different from one another."   18 U.S.C. § 924(e)(1).   At sentencing, the Court applied the ACCA and imposed a sentence of 15 years on Count 3 because defendant had the following qualifying offenses: (1) bank robbery in 1984, (2) armed bank robbery in 1992 and (3) conspiracy to distribute marijuana in 1999.[10]

Previously, this Court determined that even after Johnson v. United States, 576 U.S. 591 (2015), defendant's 1984 bank robbery conviction and his 1992 armed bank robbery conviction qualify as violent felonies under the ACCA.   Memorandum And Order (Doc. #283) at 11–15.   As

---

[10]   For purposes of defendant's motion and based on the Supreme Court's reasoning in Johnson, the Court assumes that defendant's fourth potential qualifying conviction, attempted burglary, see PSR, ¶ 45, no longer qualifies as a violent felony under the ACCA.   See Johnson, 576 U.S. at 594, 606 (overruling James v. United States, 550 U.S. 192 (2007), which held that attempted burglary under Florida law is violent felony under ACCA residual clause); see also United States v. Robinson, 720 F. App'x 946, 951 (10th Cir. 2018) (attempted burglary conviction in James had to be analyzed under residual clause because it explicitly did not qualify as burglary under elements or enumerated-offenses clauses).

-17-

to defendant's third qualifying conviction under the ACCA for conspiracy to distribute marijuana, defendant previously argued that the conviction does not qualify as a "serious drug offense" because it carried a maximum term of imprisonment of five years.   Motion To Vacate (Doc. #259) at 26; see 18 U.S.C. § 924(e)(2)(A)(i) (serious drug offense defined as drug offense with a maximum term of imprisonment of ten years or more); 21 U.S.C. § 841(b)(1)(D) (maximum penalty of five years).   The Court previously rejected this claim because it was beyond the scope of the Tenth Circuit authorization for a second or successive Section 2255 motion.   Memorandum And Order (Doc. #283) at 15.

The Court's denial of relief on defendant's challenge to his ACCA conviction is not an extraordinary and compelling reason for his release.   As explained above, defendant's sentence of 180 months under the ACCA (Count 3) ran concurrent to his sentence of 294 months for armed bank robbery (Count 1).   Even if defendant had raised a timely and successful challenge to his enhanced sentence under the ACCA, his operative sentence of 594 months would have remained the same.   He therefore has not shown that his legal challenges to the length of his sentence under the ACCA are extraordinary and compelling reasons for release.

3.   Challenge To Career Offender Enhancement Under Guidelines

Defendant argues that the Court erroneously classified him as a career offender under Section 4B1.1 of the Sentencing Guidelines.   Under the Guidelines, a defendant is a "career offender" if (1) he was at least 18 years old at the time he committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) he has at least two prior felony convictions of either a "crime of violence" or a controlled substance offense.   U.S.S.G. § 4B1.1(a).   The Guidelines define a "crime of violence" as any offense under federal or state law, punishable by imprisonment for a

-18-

term exceeding one year, that "(1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use or unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c)."   U.S.S.G. § 4B1.2(a).

Defendant does not specifically explain his challenge to the Court's assessment that his 1992 armed bank robbery conviction is a "crime of violence" and that his 1999 marijuana conspiracy conviction is a "controlled substance offense."   As the Court explained in the context of defendant's challenge to his conviction under Section 924(c), armed bank robbery is a crime of violence because it requires that the individual assault another person, or put "in jeopardy the life of any person by the use of a dangerous weapon or device," 18 U.S.C. § 2113(d), which "necessarily threatens the use of violent force."   Memorandum And Order (Doc. #283) at 8–9 (quoting United States v. Lloyd, 741 F. App'x 570, 573 (10th Cir. 2018)) (further citations omitted).   Likewise, defendant's marijuana conspiracy conviction is a "controlled substance offense" because it was punishable under federal law for a term exceeding one year.   U.S.S.G. § 4B1.2(b).   Defendant has not shown that the Court's application of the career offender enhancement under the Guidelines or his collective legal challenges is an extraordinary and compelling reason for release.

## II.    Section 3553(a) Factors

Even if defendant's age, his health conditions, COVID-19, the length of his sentence, the fact that other violent offenders have received compassionate release and his unsuccessful legal challenges to the validity of his convictions and sentence collectively could somehow constitute "extraordinary and compelling" reasons for release, the Court would deny relief after considering

the factors under 18 U.S.C. § 3553.   A sentence of approximately 250 months including good time credit is inconsistent with the seriousness of defendant's offense, the need for deterrence and the need to protect the public.

Defendant has a lengthy criminal history.   In 1984, defendant pled guilty to bank robbery and was sentenced to 120 months in prison.   PSR, ¶ 44.   In June of 1990, less than two months after the BOP released him on parole, defendant attempted to burglarize a service station.   Id., ¶ 45.   The state court sentenced him to one to five years in prison, but apparently released him on a suspended sentence.   Some two months later, in August of 1990, defendant robbed two different banks.   Id., ¶¶ 49–52.   On both occasions, he wore a Halloween mask and pointed a firearm at bank employees.   Law enforcement officers did not learn of defendant's involvement in the 1990 armed bank robberies until 1992 when they arrested him for the armed robbery of a different bank that year.   Id., ¶ 46.   Defendant admitted his involvement in the three armed bank robberies and pled guilty to a single count of armed bank robbery.   The late Honorable Earl E. O'Connor sentenced defendant to 194 months in prison.   While in BOP custody, defendant conspired with a prison official and others to distribute and possess with intent to distribute marijuana.   Id., ¶ 47. A federal court sentenced defendant to 37 months in prison to be served consecutive to his bank robbery sentence.

On November 6, 2006, some nine months after the BOP released defendant, he committed the instant offenses, which again included armed bank robbery.[11]   Defendant attempted to elude police in an extended and dangerous police chase.   Id., ¶ 30 (applying additional enhancement for

---

[11]   The grand jury also charged defendant with an armed bank robbery which occurred on October 31, 2006.   The Court severed the trial of the counts related to the second bank robbery and at the government's request, later dismissed those counts without prejudice.

reckless endangerment during flight).   After the government charged defendant, he tried to convince his former girlfriend to lie so that he could establish an alibi.   Id., ¶ 29 (applying enhancement for obstruction of justice because defendant attempted to suborn perjury).   At trial, he testified to a fanciful version of events in an attempt to convince the jury that he was not near the bank at the time of the robbery and that the first time that he knew that a firearm was in his vehicle was when Morrison pulled out the shotgun during the police chase.

Defendant states that he takes "full responsibility for the bank robbery," Defendant's Response To The Government's Opposition To His 18 U.S.C. § 3582(c)(1)(A) Motion (Doc. #294) at 1, but the jury convicted him of *armed* bank robbery, using a firearm during and relation to a crime of violence, and being a felon in possession of a firearm.   Defendant apparently continues to take no responsibility for the firearm that he used in the instant offenses.   Defendant's history of using firearms during bank robberies and his inability to successfully complete more than a brief period of supervised release suggests that he would pose a danger to society if released today, after serving less than half of his sentence.

Defendant has a significant disciplinary history in BOP custody.   Since 2016, however, defendant apparently has made progress toward rehabilitation.   He has been involved in fewer and less severe disciplinary incidents.   He has completed the non-residential drug treatment program and states that he has not used illegal drugs since 2016.   The BOP has lowered defendant's risk of recidivism from high to medium.   Despite some progress toward rehabilitation, on balance, the factors under Section 3553(a) do not support a reduced sentence.   A reduction of defendant's sentence to approximately 250 months would reflect a significant disparity from his current sentence of 594 months, which was the middle of his guideline range of 562 to 627 months.   In sum, the Section 3553(a) factors do not favor release.

**IT IS THEREFORE ORDERED** that defendant's <u>Motion Under 18 U.S.C.</u>

<u>§ 3582(c)(1)(A) For Compassionate Release Or A Reduction Of Sentence</u> (Doc. #289) filed

November 21, 2022 is **OVERRULED**.

Dated this 21st day of February, 2023 at Kansas City, Kansas.

<u>s/ Kathryn H. Vratil</u>
KATHRYN H. VRATIL
United States District Judge